United States District Court
Southern District of Texas

**ENTERED**

September 05, 2023

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| SUEROS Y BEBIDAS REHIDRATANTES, S.A. DE D.V., *et al.*, §§§§ | |
| Plaintiff, § | CIVIL ACTION NO. H-22-1304 |
| v. § | |
| INDUS ENTERPRISES, LLC, §§§ | |
| Defendant. §§ | |

**MEMORANDUM AND OPINION**

Sueros & Bebidas Rehidratantes, S.A. de D.V., sells a rehydration beverage that is made in Mexico and sold in the United States by an exclusive licensee, CAB Enterprises, Inc. The beverage is sold under registered trademarks and trade dress as "Electrolit." (Docket Entry No. 44 at 7). Sueros and CAB have sued Indus Enterprises, LLC, d/b/a Texas Jasmine, for selling a materially different formula under an unauthorized and fake Electrolit trademark and dress. Texas Jasmine purchases Mexican Electrolit, relabels it, and sells it to United States convenience stores and grocers. (Docket Entry No. 49 at 20).

The plaintiffs have moved for partial summary judgment on counts I, III, VIII, IX, X, and XI of the complaint. These counts allege federal and common law trademark infringement, false designation of origin, common-law unfair competition, common-law unfair competition by misappropriation, and unjust enrichment. In support of their motion, the plaintiffs submitted a report and testimony about a survey conducted by Professor David Franklyn, who is a law school professor with experience teaching at a business school. Texas Jasmine has moved to exclude his

report and testimony under Rule 702 of the Federal Rules of Evidence, describing them as "the charlatan type of fools [sic] gold that [the Rule] was designed to prevent." (Docket Entry No. 43 at 7).

The court has carefully reviewed the record, including the report and deposition of Professor Franklyn, as well as Rule 702, *Daubert v. Merrill Dow Pharms., Inc*., 509 U.S. 579 (1993) and subsequent cases. Based on that review, the court concludes that while Professor Franklyn's report and testimony may not be pure gold, they meet the gold standard of sufficient reliability to be helpful to the factfinder. Based on the parties' briefing, the summary judgment evidence, the record, and the relevant law, the court grants the plaintiffs' motion for summary judgment. The reasons are set out below.

## I.      The Standard for Expert Testimony

Federal Rule of Evidence 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if
(1) the testimony is based upon sufficient facts or data,
(2) the testimony is the product of reliable principles and methods, and
(3) the witness has applied the principles and methods reliably to the facts of the case.

"Rule 702 charges trial courts to act as 'gate-keepers,' making a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'" *Pipitone v. Biomatrix, Inc*., 288 F.3d 239, 243–44 (5th Cir. 2002) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993)). Expert testimony must be both "relevant and reliable" to be admissible. *United States v. Tucker*, 345 F.3d 320, 327 (5th Cir. 2003) (quoting *Pipitone*, 288 F.3d

at 243–44); *Daubert*, 509 U.S. at 589 ("[U]nder the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.").

In making its reliability determination, the court considers the soundness of the general principles or reasoning on which the expert relies and of the methodology that applies those principles to the facts of the case. *Daubert*, 509 U.S. at 594–95; *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997). Several factors guide a district court's inquiry into the reliability of expert testimony, including: "(1) whether the technique in question has been tested; (2) whether the technique has been subject to peer review and publication; (3) the error rate of the technique; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has been generally accepted[.]" *United States v. Perry*, 35 F.4th 293, 329 (5th Cir. 2022) (citing *Daubert v. Merrill Dow Pharms.*, 509 U.S. 579, 593–94 (1993)). Not all factors apply in every case.

Admissibility of expert testimony is an issue for the trial judge to resolve under Federal Rule of Evidence 104(a). *Daubert*, 509 U.S. at 592–93. The party offering the testimony must prove by a preponderance of the evidence that the expert's opinion is relevant and reliable. *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987); *Mathis v. Exxon Corp.*, 302 F.3d 448, 460 (5th Cir. 2002). "A trial court's ruling regarding admissibility of expert testimony is protected by an ambit of discretion and must be sustained unless manifestly erroneous." *Satcher v. Honda Motor Co.*, 52 F.3d 1311, 1317 (5th Cir. 1995) (citation omitted).

## II.    The Rule 56 Standard

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting Fed. R. Civ. P. 56(a)). "A fact is material if it might affect the outcome of the

suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021) (quoting reference omitted).   The moving party "always bears the initial responsibility of informing the district court of the basis for its motion[] and identifying" the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When 'the non-movant bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is [a dispute] of material fact." *MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (alteration in original) (quoting reference omitted).   "However[,] the movant 'need not negate the elements of the nonmovant's case.'" *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).   "If 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)).

After the movant meets its Rule 56(c) burden, "the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quoting references omitted).   The nonmovant "must identify specific evidence in the record and articulate the 'precise manner' in which the evidence" aids their case. *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (quoting reference omitted).   Of course, all reasonable inferences are drawn in the nonmovant's favor.   *Loftin v. City of Prentiss*, 33 F.4th 774, 779 (5th Cir. 2022).   But a nonmovant "cannot defeat summary judgment

with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (quoting reference omitted).

## III.   Analysis

### A.  Professor Franklin's Testimony

There are two major parts to the motion to exclude.  The first is that Professor Franklyn's education, credentials, and experience are not in marketing and branding.  The second is that his survey was faulty.

Sueros retained Professor Franklyn to survey consumers as to whether the identified differences between its products and the Texas Jasmine products were material differences.  The question was certainly relevant.  As Texas Jasmine argues, the key for gray-market goods cases— cases in which third parties import brand-name goods protected by trademark into the United States—is whether the product differences would affect the consumer's purchasing decisions and are therefore material.  To determine whether the differences between the plaintiff's and the defendants' rehydration beverages were material, Professor Franklyn used a survey form that he had developed and used five or six times.  The form has not been used by others or peer reviewed.

The differences between the products do not appear disputed.  They are:

a. Packaging and labeling on bottles of genuine U.S. Electrolit® contain text written exclusively in English, while packaging and labeling applied on bottles of Unauthorized Electrolit contain Spanish.

b. Genuine U.S. Electrolit® products contain the unique, U.S. Electrolit® formula, while Unauthorized Electrolit contains a different formula. For example, genuine U.S. Electrolit® uses all-natural flavoring, while Unauthorized Electrolit contains the artificial sweetener, Sucralose.

c. To comply with U.S. Food and Drug Administration ("FDA") regulations, labels on genuine U.S. Electrolit® products all ingredients in the product and include FDA-compliant "Nutrition Facts." Labels on Unauthorized Electrolit products do not, because those products are only authorized to be sold outside the United States where different labeling regulations apply. For example, labels on Unauthorized Electrolit products do not list that Sucralose is an ingredient in that formula.

d. Labels on genuine U.S. Electrolit® products list a U.S. toll-free number for customers to call with comments or complaints. Labels on Unauthorized Electrolit products do not list a U.S. toll-free number because they are not authorized to be sold in the United States.

e. Packaging on genuine U.S. Electrolit® states that the product is gluten-free and sweetened with natural glucose, while Unauthorized Electrolit does not.

f. Packaging on genuine U.S. Electrolit® uses imperial measurements (e.g., fluid ounces) that U.S. consumers are accustomed to whereas Unauthorized Electrolit packaging uses metric measurements (e.g., milliliters) that international consumers are accustomed to.

g. Packaging on genuine U.S. Electrolit® does not make health claims regarding the product because such pharmaceutical-like claims have not yet been approved by the FDA. Unauthorized Electrolit packaging, by contrast, contains health claims that it treats and prevents dehydration that comply with applicable regulations in the countries where Unauthorized Electrolit is authorized to be sold.

h. Packaging on genuine U.S. Electrolit® lists a "USE BY" date that informs retailers and consumers about the freshness and the quality of the product. Packaging on Unauthorized Electrolit does not list a "USE BY" date.

i. Packaging on genuine U.S. Electrolit® includes bottle deposit refund information applicable in the United States and written in English, while Unauthorized Electrolit packaging does not.

(Docket Entry No. 46 at 4–5).

Professor Franklyn's survey was systematic.  It was a double-blind survey of 392 Americans who had purchased rehydration beverages over the past year or said that they were likely to do so over the next year. (*Id.* at 9)  Each respondent was asked how important each of 14 product differences would be to their decision to purchase such a beverage.  Each question could be answered either "very important," "important," "slightly important," "not at all important," and "don't know or don't have an opinion about that."  (Docket Entry No. 45-12).  The survey showed that in all but one category — whether the label identified the product as gluten free—over 50% of those responding found the difference "very important" or "important" to their purchasing decision. (*Id.*).  The greatest number of respondents stated that whether the label included a "use

by date," whether it listed all ingredients, and whether the product was authorized for sale in the United States was "very important" or "important" to their purchasing decision. (*Id.* at 13).

The defendants cite *Jaguar Land Rover Ltd. v. Bombardier Recreations Products, Inc*., 2019 WL 13032105 (E.D. Mich. Jan. 4, 2019), as a case in which the judge excluded some of Mr. Franklyn's testimony.  The testimony concerned whether a junior mark used for a recreational vehicle was infringing on a similar senior mark used for related goods.  The court in that case ruled that the fact that Mr. Franklyn had taught courses in business, marketing, advertising, trademarks, and survey design did not make him a marketing and branding expert. The court granted the plaintiff's motion to exclude Mr. Franklyn's rebuttal testimony, but, importantly for the present case, denied the plaintiff's motion to exclude Mr. Franklyn's survey as evidence.  *Jaguar Land Rover*, 2019 WL 13032105 at 3.

The defendants urge the court to exclude the survey because Professor Franklyn is not a marketing expert, although he teaches trademark law in law school and has taught marketing and advertising classes in business school.  He does not have degrees in, or publications specifically on, marketing or branding.   Most of his "marketing related" services are in litigation.   He developed his own survey to measure "material differences" in products.  He has used the survey three or four other times but has not published it or otherwise sought or received peer reviews or marketed it to others to adopt.  He did not "pilot test" his survey form before using it in this case.  And, according to the defendants, he asked the wrong questions:  he should have asked about consumer behavior (the way people choose and use a product), but he instead asked about consumer perception (the opinions, feelings, and beliefs customers have about the product brand).

The question is whether the weaknesses in training and experience the defendants point to require excluding Professor Franklyn's report and testimony about his opinions, or whether they

allow admission but affect the weight to be given those opinions.  "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land, More or Less Sit. In Leflore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

The court concludes that Professor Franklyn's survey is admissible, because it is straightforward, clear, and is consistent with the undisputed facts showing that the defendants' rehydration beverage product copies the plaintiffs' trade dress.  The product packaging and labeling make them appear to be virtually identical, but the contents are clearly materially different, and, on closer inspection, the labeling information is materially different.  (Docket Entry No. 14 at 14–16).  The report and testimony on the survey are admissible.

## B.  Infringement Liability

Section 32 of the Lanham Act provides a cause of action for infringement when, without the registrant's consent, one uses "in commerce, any reproduction, counterfeit, copy[,] or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or to cause mistake or to deceive. . . ." 15 U.S.C. § 1114(1)(a). To prove infringement, a plaintiff must show that it owns a legally protectable mark and that there is a likelihood of confusion between that mark and the defendants' allegedly infringing material. *Am. Rice Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008). The defendant bears the burden in challenging a registered mark's validity. *Pebble Beach Co. v. Tour18 I, Ltd.*, 942 F. Supp. 1513, 1537 (S.D. Tex. 1996).

The Fifth Circuit assesses the likelihood of confusion based on the following digits of confusion: "(1) strength of the plaintiff's mark; (2) similarity of design between the marks; (3) similarity of the products; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) the defendants' intent; (7) actual confusion; and (8) degree of care exercised by potential purchasers." *Am. Rice*, 518 F.3d at 329 (citing *Oreck Corp. v. U.S. Floor Systems, Inc.*, 803 F.2d 166, 170 (5th Cir. 1986)); *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009). The court must assess and weigh each digit to determine whether there is a likelihood of confusion. "No one factor is dispositive, and a finding of a likelihood of confusion does not even require a positive finding on a majority of these 'digits of confusion.'" *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998) (quoting *Conan Properties, Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 150 (5th Cir. 1985)).

The likelihood of confusion standard used in Lanham Act infringement analysis also applies to federal and common-law unfair competition and trademark infringement claims. *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc.*, 988 F.2d 587, 592 (5th Cir. 1993); *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 483–84 (5th Cir. 2004). False designation of origin and unjust enrichment claims are also analyzed under this test when the crux of the claim is based on use of a trademark. *Am. Century Proprietary Holdings, Inc. v. Am. Century Cas. Co.*, 295 F. App'x 630, 635 (5th Cir. 2008); *Bos. Pro. Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1010 (5th Cir. 1975). Although the likelihood of confusion is generally a fact question, *Elvis Presley Enters.*, 141 F.3d at 196, summary judgment is proper if the undisputed facts in the "summary judgment record compel[] the conclusion that the movant is entitled to judgment as a matter of law." *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*,

550 F.3d 465, 474 (5th Cir. 2008) (citing *Beef/Eater Rests., Inc. v. James Burrough Ltd.*, 398 F.2d 637, 639 (5th Cir. 1968)).

### i.      Possession of a Legally Protectable Mark

The first element of trademark infringement is possession of a legally protectable mark. *Am. Rice*, 518 F.3d at 329. To be protectable, a mark must be distinctive, either inherently or by achieving secondary meaning. *Id*.  Sueros has multiple federally registered trademarks. (Docket Entry No. 45 at 12). Under the Lanham Act, Sueros's certificate of registration for each of its federal trademarks is prima facie evidence of the validity of the marks and of the exclusive right to use them in connection with the sale of rehydration beverages. 15 U.S.C. § 1057(b), § 1115(a). Three of Sueros's four federal trademarks have become incontestable, and Texas Jasmine concedes that all are valid. (Docket Entry No. 46 at 3).  Once a mark becomes incontestable, its federal registration is conclusive evidence of its validity, subject only to the defenses set out in the Lanham Act, including that the mark has been abandoned or that it is generic. § 1115(a); *see* § 1115(b)(2), § 1065(4); *see also Am. Rice*, 518 F.3d at 330.

Texas Jasmine argues that although three of the four trademarks are incontestable, the "Electrolit marks are not protectable because they consist of a term ('Electrolyte') that is a generic term for the product that Plaintiffs sell." (Docket Entry No. 49 at 23).  This argument is addressed below.

### ii.     The Likelihood of Confusion

### a)  The Strength of the Mark

"The stronger the mark, the greater the protection it receives." *Elvis Presley Enters.*, 141 F.3d at 201. A trademark's strength is determined by its classification and the degree to which it is recognized in the marketplace. *Am. Rice*, 518 F.3d at 330; *Sun Banks of Fla., Inc. v Sun Fed.*

*Sav. & Loan Ass'n*, 651 F.2d 311, 315 (5th Cir. 1981). Marks are classified along a spectrum running from generic to descriptive, suggestive, or arbitrary and fanciful. *Am. Rice*, 518 F.3d at 330. "[W]ithin this spectrum, the strength of a mark, and of its protection, increases as one moves away from generic and descriptive marks toward arbitrary marks." *Id.* (quoting *Falcon Rice Mill, Inc. v. Cmty. Rice Mill, Inc.*, 725 F.2d 336, 346 (5th Cir. 1984)). "Marketplace recognition depends on 'advertising, length of time in business, public recognition, and uniqueness.'" *RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*, 655 F. Supp. 2d 679, 698–99 (S.D. Tex. 2009) (quoting *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1179 (9th Cir. 1988)).

Texas Jasmine argues that "Electrolit" is a spelling variation of the generic term "Electrolyte" and is therefore not entitled to protection. A trademark is or may become generic if the public does not identify the mark with a particular source, but instead identifies it with the genus of the goods or services at issue. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). A generic term communicates "information about the nature or class of an article or service" and cannot be a service mark. *Sun Banks of Fla.*, 651 F.2d at 315. A word may be generic as to some things and not others. "'Ivory' is generic of elephant tusks but arbitrary as applied to soap." *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1183 (5th Cir. 1980). The defendant has the burden of challenging a registered mark's validity. *Pebble Beach Co.*, 942 F. Supp. at 1537.

Texas Jasmine has neither pointed to nor submitted evidence showing that the public perceives "Electrolit" as communicating information about the "nature or class" of rehydration beverages. Although Texas Jasmine offers evidence that CAB's corporate representative sometimes pronounces "Electrolit" as "Electrolyte," (Docket Entry No. 49 at 24), Texas Jasmine does not address public perception of the mark "Electrolit." Texas Jasmine has failed to raise a factual dispute as to whether the "Electrolit" mark is generic.

11

The Electrolit marks comprise not only the word "Electrolit," but also a four-colored splash logo above the word "Electrolit."  Texas Jasmine has not pointed to evidence that another entity has used or registered the "Electrolit" mark. *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 259–60 (5th Cir. 1980).  This digit weighs in favor of finding a strong mark.

### b)  The Similarity of the Marks

This factor requires the court to consider the similarity between "marks in the context that a customer perceives them in the marketplace, which includes their presentation in advertisements." *Elvis Presley Enters.*, 141 F.3d at 197. The court does not restrict itself to comparing individual features, instead considering "the commercial impression created by the mark as a whole." *Amstar Corp.*, 615 F.2d at 261 (citation omitted). "'The relevant inquiry is whether, under the circumstances of the use,' the marks are sufficiently similar that prospective purchasers are likely to believe that the two users are somehow associated." *Elvis Presley Enters.*, 141 F.3d at 201.

Texas Jasmine has admitted that it sells Electrolit products. (Docket Entry No. 45-7). Photos of those products show that the marks used are identical to the trademarked Electrolit marks.  (Docket Entry No. 44 at 14). The similarity of the marks weighs strongly in favor of finding a likelihood of confusion.

### c)  The Identity of the Products Sold

"The greater the similarity between products and services, the greater the likelihood of confusion." *Elvis Presley Enters.*, 141 F.3d at 202. Texas Jasmine has admitted that it sells repackaged Electrolit rehydration beverages. (Docket Entry No. 45-7).  This digit weighs strongly in favor of finding a likelihood of confusion.

### d)  The Identity of the Purchasers

"Differences in the parties' customer bases can lessen the likelihood of confusion." *Quantum Fitness Corp. v. Quantum LifeStyle Centers, LLC*, 83 F. Supp. 2d 810, 826 (S.D. Tex. 1999) (citing *Exxon Corp. v. Texas Motor Exch. Of Houston, Inc*., 628 F.2d 500, 505–506 (5th Cir. 1980)). Both parties sell rehydration beverages, and it is alleged that Texas Jasmine undercuts the prices of CAB's Electrolit. (Docket Entry No. 44 at 6). However, no evidence has been submitted as to the consumer bases of each product. This factor is neutral.

### e)  The Similarity of Advertising Media

The record contains scant evidence about advertising beyond a screen shot of Texas Jasmine's website. (Docket Entry No. 44 at 8). However, "[i]t is the labels that the prospective purchaser sees. The trademarks cannot be isolated from the labels on which they appear." *Sun–Maid Raisin Growers of Ca. v. Sunaid Food Prods., Inc.*, 356 F.2d 467, 469 (5th Cir. 1966). Because the parties use the same visible marks on their labels, this digit weighs in favor of finding a likelihood of confusion.

### f)  The Defendant's Intent

"Proof of the defendant's intent to benefit from the good reputation of the plaintiff's products is not required in order to establish infringement." *Oreck*, 803 F.2d at 173. "If, however, a plaintiff can show that a defendant adopted a mark with the intent of deriving benefit from the reputation of the plaintiff, that fact alone 'may be sufficient to justify the inference that there is confusing similarity.'" *Exxon Corp. v. Texas Motor Exch. Of Houston, Inc.*, 628 F.2d 500, 506 (5th Cir.1980). However, Texas Jasmine has claimed that it was participating in valid gray-market sales of Electrolit, that is, importing Mexican Electrolit into the United States for sale. The plaintiffs have not alleged bad faith on the part of Texas Jasmine.  This factor is therefore neutral.

### g)  Actual Confusion

"Although evidence of actual confusion is not necessary to a finding of likelihood of confusion, it is nevertheless the best evidence of likelihood of confusion." *Amstar*, 615 F.2d at 263 (citing *Roto–Rooter Corp. v. O'Neal*, 513 F.2d 44, 46 (5th Cir.1975)). A plaintiff may show actual confusion using anecdotal instances of consumer confusion, systematic consumer surveys, or both. *See Scott Fetzer*, 381 F.3d at 486 (2004); *Moore Bus. Forms, Inc. v. Ryu*, 960 F.2d 486, 491 (5th Cir. 1992). Here, no evidence has been provided showing actual confusion, because the goods in question are gray-market goods. This factor is neutral.

### h) The Degree of Care by Potential Purchasers

The sophistication and degree of care exercised by potential purchasers is a separate factor in the likelihood of confusion analysis. *Am. Rice,* 518 F.3d at 333–34. "[C]onfusion is more likely . . . if the products in question are 'impulse' items or are inexpensive." *Falcon Rice Mill, Inc. v. Community Rice Mill, Inc.*, 725 F.2d 336, 345 n.9 (5th Cir.1984) (rice); *see also Smack Apparel*, 550 F.3d at 483 (t-shirts). The products here are inexpensive beverages, and no record evidence suggests that potential purchasers exercise a high degree of care in their decisions to purchase the products. This factor weighs in favor of a likelihood of confusion.

### iii. Defenses

Although Texas Jasmine concedes that it sells Electrolit produced outside the United States within the United States, it claims that the plaintiffs cannot succeed in their infringement claims because Texas Jasmine is selling "gray-market" goods. "A gray-market good is a foreign-manufactured good, bearing a valid United States trademark, that is imported without the consent of the United States trademark holder." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 285 (1988). Infringement claims for gray-market goods may succeed "where the foreign goods imported by the defendant gray market importer are materially different from the goods sold by the plaintiff

authorized to sell the trademarked goods in the domestic market." *Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Co.*, 112 F.3d 1296, 1301 (5th Cir. 1997).

Texas Jasmine claims that there is no material difference between the plaintiffs' Electrolit and the Electrolit Texas Jasmine sells in the United States, because both are "manufactured by a *single* manufacturer in Mexico, under the direct quality control standards maintained by Plaintiffs." (Docket Entry No. 49 at 13–14). This does not mean there are no material differences between the two Electrolit products. "[T]he threshold of materiality is always quite low in such cases." *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 641 (1st Cir. 1992).

The Electrolit sold by Texas Jasmine may be manufactured by Sueros, but Sueros makes multiple Electrolit versions for different national markets that are "customized to reflect differences in terms of government regulations, consumer preferences, and language, among other considerations." (Docket Entry No. 44 at 8). The manufacturer's identity does not determine whether material differences exist in the Electrolit sold in the United States market. Even small differences in packaging and ingredients may be material. *Nestle*, 982 F.2d at 641. As discussed above, there are several differences in the Electrolit labelling, including differences in ingredients and compliance with FDA regulations. (Docket Entry No. 46 at 4–5). The importance of this information to consumers is laid out in Professor Franklyn's survey, and there is no contrary survey or other evidence. As other courts have ruled, "[t]he failure to comply with such federal and state laws and regulations constitutes a material difference." *Bayer Corp. v. Custom Sch. Frames, LLC*, 259 F. Supp. 2d 503, 508 (E.D. La. 2003).

Finally, Texas Jasmine's argument that the "[p]laintiffs are not entitled to a presumption of a likelihood of confusion," (Docket Entry No. 49 at 27), fails. The record shows a strong

likelihood of confusion. Texas Jasmine has failed to raise a factual dispute material to determining material differences or the likelihood of confusion between the products.

## IV.   Conclusion

The court denies the defendant's motion to exclude the testimony of Professor Franklyn. The court grants the plaintiffs' motion for partial summary judgment, on Counts I, III, VIII, IX, X, AND XI of the amended complaint.

SIGNED on September 5, 2023, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge